JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Ashley Pugh and Daniel Pugh, Individually and As Parents and Natural Guardians of Sean Pugh, A Minor

**DEFENDANTS**
Community Health Systems, Inc. d/b/a Easton Hospital, Northampton Hospital Company, LLC d/b/a Easton Hospital, Steward Easton Hospital d/b/a Easton Hospital, et al.

**(b)** County of Residence of First Listed Plaintiff   Burlington County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Northampton County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas A. Lynam, III, Esquire/Leonard G. Villari, Esquire
Villari, Lentz & Lynam, LLC
100 N. 20th Street, Suite 302, Philadelphia, PA 19103   215-568-1990

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☒ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| | | | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sections 1332 and 1367

Brief description of cause:
Personal Injuries under theories of strict liability and negligence

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE                                   DOCKET NUMBER

DATE
02/03/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #                 AMOUNT                 APPLYING IFP                 JUDGE                 MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____8 Peyton Court, Marlton, NJ 08053_____

Address of Defendant: _250 South 21st Street, Easton, PA 18042, 2005 Fairview Avenue, Suite B, Easton, PA 18042 & 1208 Orange Street, Wilmington, DE 19801_

Place of Accident, Incident or Transaction: _____250 South 21st Street, Easton, PA 18042_____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _02/03/2020_ _____ _____83817_____
*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

*A.* *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
   *(Please specify): _____*

*B.* *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☒ 6. Other Personal Injury *(Please specify):* Medical Malpractice
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
   *(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _Thomas A. Lynam, III, Esquire_, counsel of record *or pro se plaintiff, do hereby certify:*

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _02/03/2020_ _____ _____83817_____
*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Ashley Pugh and Daniel Pugh, Individually and As Parents and Natural Guardians of Sean Pugh, A Minor | : | CIVIL ACTION |
| v. | : | |
| Community Health Systems, Inc. d/b/a Easton Hospital, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.               ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.               ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)               ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.               (X)

| February 3, 2020 | | Plaintiffs, Ashley, Daniel and Sean Pugh |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-568-1990 | 215-568-9920 | tlynam@vll-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASHLEY PUGH and DANIEL PUGH, | : | |
| Individually, and as Parents and Natural | : | |
| Guardians of SEAN PUGH, a Minor | : | CIVIL ACTION |
| 8 Peyton Court | : | |
| Marlton, NJ 08053, | : | |
| Plaintiffs | : | No. |
| v. | : | |
| | : | |
| COMMUNITY HEALTH SYSTEMS, INC. | : | |
| d/b/a EASTON HOSPITAL | : | |
| 250 South 21st Street | : | |
| Easton, PA 18042 | : | |
| and | : | |
| NORTHAMPTON HOSPITAL COMPANY, LLC | : | |
| d/b/a EASTON HOSPITAL | : | |
| 250 South 21st Street | : | |
| Easton, PA 18042 | : | |
| and | : | |
| STEWARD EASTON HOSPITAL, INC. d/b/a | : | |
| EASTON HOSPITAL | : | |
| 250 South 21st Street | : | |
| Easton, PA 18042 | : | |
| and | : | |
| STEWARD HEALTH CARE SYSTEM, LLC | : | |
| d/b/a STEWARD EASTON HOSPITAL, INC. | : | |
| and STEWARD MEDICAL GROUP, INC. and | : | |
| EASTON HOSPITAL | : | |
| 250 South 21st Street | : | |
| Easton, PA 18042 | : | |
| and | : | |
| STEWARD HEALTH CARE NETWORK, INC. | : | |
| 1209 Orange Street | : | |
| Wilmington, DE 19801 | : | |
| and | : | |
| NORTHAMPTON CLINIC COMPANY, LLC | : | |
| d/b/a EASTON AREA OBSTETRICS & | : | |
| GYNECOLOGY ASSOCIATES | : | |
| 2005 Fairview Avenue, Suite B | : | |
| Easton, PA 18042 | : | |
| and | : | |
| | : | |
| | : | |
| | : | |

STEWARD MEDICAL GROUP, INC. d/b/a :
EASTON AREA OBSTETRICS & :
GYNECOLOGY ASSOCIATES :
2005 Fairview Avenue, Suite B :
Easton, PA 18042 :
   and :
DOUHA SABOUNI, M.D. :
2005 Fairview Avenue, Suite B :
Easton, PA 18042, :
     Defendants. :

## CIVIL ACTION COMPLAINT

Plaintiffs, Ashley Pugh and Daniel Pugh, Individually, as Parents and Natural Guardians of Sean Pugh, a Minor, and through their counsel, Villari, Lentz & Lynam, hereby file this Civil Action, and in support thereof aver as follows:

## I. PARTIES

1. Plaintiffs Ashley Pugh ("Mrs. Pugh") and Daniel Pugh ("Mr. Pugh"), wife and husband, are adult individuals, residing at 8 Peyton Court, Marlton, New Jersey 08053.

2. Plaintiff Sean Pugh ("Sean") is a five (5) year old minor (D.O.B. 01/23/14), residing at 8 Peyton Court, Marlton, New Jersey 08053 with his parents and natural guardians, Ashley Pugh and Daniel Pugh (collectively "Plaintiffs").

3. Defendant Community Health Systems, Inc. d/b/a Easton Hospital ("CHS"), against whom allegations of professional negligence are hereby made, is a Pennsylvania corporation with a business address located at 250 South 21st Street, Easton, Pennsylvania 18042.

4. At all times material hereto, Defendant CHS acted or failed to act, by and through its agents, ostensible agents, servants and/or work persons, who were then and there acting within the scope of their authority in the course of their relationship with said Defendant in furtherance of Defendant's pecuniary and other interests.

2

5.      Defendant CHS, as principal, is vicariously or otherwise responsible for the negligent acts or omissions of its agents, ostensible agents, servants and/or work persons, including, but not limited to, co-Defendants herein.

6.      Defendant Northampton Hospital Company, LLC d/b/a Easton Hospital ("NHC"), against whom allegations of professional negligence are hereby made, is a Delaware corporation with a business address located at 250 South 21st Street, Easton, Pennsylvania 18042.

7.      At all times material hereto, Defendant NHC acted or failed to act, by and through its agents, ostensible agents, servants and/or work persons, who were then and there acting within the scope of their authority in the course of their relationship with said Defendant in furtherance of Defendant's pecuniary and other interests.

8.      Defendant NHC, as principal, is vicariously or otherwise responsible for the negligent acts or omissions of its agents, ostensible agents, servants and/or work persons, including, but not limited to, co-Defendants herein.

9.      At all times material hereto, Defendants CHS and NHC owned, operated, managed and/or controlled Easton Hospital.

10.     In the spring of 2017, Easton Hospital was acquired by Co-Defendants Steward Easton Hospital, Inc. and Steward Health Care System, LLC.

11.     Defendant Steward Easton Hospital, Inc. d/b/a Easton Hospital ("SEH"), is a Delaware corporation with a business address located at 250 South 21st Street, Easton, Pennsylvania 18042.

12.     At all times material hereto, Defendant SEH acted or failed to act, by and through its agents, ostensible agents, servants and/or work persons, who were then and there acting within the scope of their authority in the course of their relationship with said Defendant in furtherance of Defendant's pecuniary and other interests.

13.     Defendant SEH, as principal and successor-in-interest, is vicariously or otherwise responsible for the negligent acts or omissions of its agents, ostensible agents, servants and/or work persons, including, but not limited to, co-Defendants herein.

14.     Defendant Steward Health Care System, LLC d/b/a Steward Easton Hospital, Inc, Steward Medical Group, Inc. and Easton Hospital ("SHCS"), is a Delaware corporation with a business address located at 250 South 21st Street, Easton, Pennsylvania 18042.

15.     At all times material hereto, Defendant SHCS acted or failed to act, by and through its agents, ostensible agents, servants and/or work persons, who were then and there acting within the scope of their authority in the course of their relationship with said Defendant in furtherance of Defendant's pecuniary and other interests.

16.     Defendant SHCS, as principal and successor-in-interest, is vicariously or otherwise responsible for the negligent acts or omissions of its agents, ostensible agents, servants and/or work persons, including, but not limited to, co-Defendants herein.

17.     Defendant Steward Health Care Network, Inc. ("SHCN") is a Delaware corporation with a registered corporate address located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

18.     Defendant SHCN consists of a vast physician network that staffs Steward hospitals across nine states under SHCS, including Easton Hospital.

19.     At all times material hereto, Defendant SHCN acted or failed to act, by and through its agents, ostensible agents, servants and/or work persons, who were then and there acting within the scope of their authority in the course of their relationship with said Defendant in furtherance of Defendant's pecuniary and other interests.

20.     Defendant SHCN, as principal and successor-in-interest, is vicariously or otherwise responsible for the negligent acts or omissions of its agents, ostensible agents, servants and/or work persons, including, but not limited to, co-Defendants herein.

21.     Defendant Northampton Clinic Company, LLC d/b/a Easton Area Obstetrics & Gynecology Associates ("NCC"), is a Pennsylvania corporation with a business address located at 2005 Fairview Avenue, Easton, Pennsylvania 18042.

22.     At all times material hereto, Defendant NCC acted or failed to act, by and through its agents, ostensible agents, servants and/or work persons, who were then and there acting within the scope of their authority in the course of their relationship with said Defendant in furtherance of Defendant's pecuniary and other interests.

23.     Defendant NCC, as principal, is vicariously or otherwise responsible for the negligent acts or omissions of its agents, ostensible agents, servants and/or work persons, including, but not limited to, co-Defendants herein.

24.     At all times material hereto, Defendant NCC owned, operated, managed and/or controlled Easton Area Obstetrics & Gynecology Associates.

25.     In the spring of 2017, Easton Area Obstetrics & Gynecology Associates was acquired by Co-Defendant Steward Medical Group, Inc.

26.     Defendant Steward Medical Group, Inc. d/b/a Easton Area Obstetrics & Gynecology Associates ("SMG"), is a Massachusetts corporation with a business address located at 2005 Fairview Avenue, Easton, Pennsylvania 18042.

27.     At all times material hereto, Defendant SMG acted or failed to act, by and through its agents, ostensible agents, servants and/or work persons, who were then and there acting within the scope of their authority in the course of their relationship with said Defendant in furtherance of Defendant's pecuniary and other interests.

5

28.     Defendant SMG, as principal and successor-in-interest, is vicariously or otherwise responsible for the negligent acts or omissions of its agents, ostensible agents, servants and/or work persons, including, but not limited to, co-Defendants herein.

29.     Defendant, Douha Sabouni, M.D., against whom allegations of professional negligence are hereby made, is an adult individual with an address located at 250 South 21st Street, Easton, Pennsylvania 18042.

30.     At all times material hereto, Defendant Sabouni was a duly licensed physician engaged in the practice of obstetrics and gynecology at Easton Hospital and Easton Area Obstetrics & Gynecology Associates.

31.     At all times material hereto, Defendant Sabouni was one of Mrs. Pugh's treating, ordering and attending physicians, during her January 22-24, 2014 admission at Defendants' facility.

32.     At all times material hereto, Defendant Sabouni was acting individually and as an agent, ostensible agent, servant, work person and/or employee of Defendants CHS, NHC, and NCC, acting within the scope of her authority and/or employment, for and on the business of said Defendants, and under their control or right of control.

33.     At all times material hereto, Defendant Sabouni acted and/or failed to act, by and through her agents, ostensible agents, servants, work persons and/or employees, including, but not limited to, office and other medical staff under her supervision, who were then and there acting within the scope of their authority in the course of their relationship with Defendants CHS, NHC, and NCC, in furtherance of said Defendants' pecuniary and other interests.

## II.    JURISDICTION

34.     This Court has original jurisdiction under 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states, and because the amount in controversy exceeds $150,000.00.

## III.    VENUE

35.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Pennsylvania.

## IV.    FACTS

36.     Plaintiffs Mr. & Mrs. Pugh moved to Easton, PA in December 2013.

37.     Mrs. Pugh was 26 years old and pregnant for the first time, when she initially presented to Easton Area Obstetrics & Gynecology Associates ("EAOG") on December 31, 2013 for a routine check-up, which was normal.

38.     Prior to moving to Easton, Mrs. Pugh treated at Cooper University Hospital Ob/Gyn for pre-natal care, and had enjoyed a completely normal pre-natal course without distress, gestational diabetes or complications of any kind.

39.     Mrs. Pugh was 32 weeks and 5 days into gestation (with an estimated delivery date of February 27, 2014), when she returned to EAOG for an ultrasound on January 7, 2014.

40.     The January 7, 2014 ultrasound indicated that the baby was normal and had a fetal heart rate of 141 bpm.

41.     On January 22, 2014, at approximately 6:00 p.m., Mrs. Pugh presented to Easton Hospital complaining of a partial rupture of membranes, after experiencing intermittent leaking that day.

42.     Mrs. Pugh was admitted to the hospital with a plan of administration of "Pitocin in the am if SOL does not occur".

43.     At 7:27 p.m. that evening, Mrs. Pugh was noted to be in a "prolonged latent phase" of labor with accelerations 15 x 15.

44.     At 11:00 p.m., FHR was noted to be 145 with no baseline change, moderate variability (6-25 bpm) and no decelerations.

45.     On January 23, 2014 at 12:24 a.m., Mrs. Pugh was noted to have a low grade temperature and was administered Tylenol.

46.     At 7:00 a.m., Defendants administered Pitocin; FHR baseline rate of 145 was observed with no baseline change, moderate variability, no decelerations and 15 x 15 accelerations.

47.     At 7:48 a.m. and continuing until 9:18 a.m., FHR baseline rate was 150 with no baseline change.

48.     At 9:18 a.m. and continuing until 10:54 a.m., FHR baseline rate was 145, with no baseline change, moderate variability and no decelerations.

49.     At 10:54 a.m., FHR tracing was noted to be Category II, with an FHR baseline rate of 142, moderate variability and no decelerations.

50.     Over the next few hours, FHR remained in the range of 140-150 with no decelerations.

51.     A 3:20 p.m. OB Provider Progress Note indicates, "Plan:  continue present management, Induction, Antibiotic therapy, Anticipate Vaginal Delivery" and "Monitor for chorioamnitis" due to the prolonged labor; at said time, Mr. Pugh was 3 cm dilated, 60% effaced and the baby was at -2 station.

52.     A 3:47 p.m. OB Provider Progress Notes indicates, "Normal progression of labor" … cont. Pit[ocin] indxn" and "OK" for epidural.

53.     At 5:05 p.m., dilation was noted to be 6.5 cm, effacement 80% and station 0.

8

54.     At 5:14 p.m., Defendants noted "Great cervical progression...Prolonged ROM: cont. antibiotics until delivery ... Cont. Pit indxn...Anticipate SVD [spontaneous vaginal delivery] and care signed over to Dr. Sabouni."

55.     At 5:16 p.m., FHR baseline rate was 150.

56.     At 5:59 p.m., FHR baseline rate was 150 with variable decelerations.

57.     At 7:00 p.m., Defendant Sabouni examined Mrs. Pugh, and noted her to be 100% effaced, 10 cm dilated, and at station +1; Defendant Sabouni stated that she would let Mrs. Pugh "continue to push until 9 p.m." and "then do a c-section".

58.     At 7:30 p.m., FHR baseline rate was 135 with moderate variability and no decelerations.

59.     At 7:59 p.m., FHR tracing was noted to be Category II, with FHR baseline rate of 150 with minimal variability.

60.     At 8:00 p.m., Defendants noted "Patient getting tired- pushing ineffective".

61.     At 8:15 p.m., FHR baseline rate was 150, no baseline change with minimal variability and variable decelerations.

62.     At 8:30 p.m., "contractions [were] inverted... toco[lytics] adjusted"; FHR baseline rate was 140, no baseline change, with variable decelerations.

63.     At 8:32 p.m., it was noted: "Pt to resume pushing.  Dr. Sabouni pushing with pt."

64.     At 8:45 p.m., FHR baseline rate dropped to 125, with moderate variability and variable decelerations.

65.     At 8:53 p.m., Defendants recorded "normal progression of labor."

66.     At 9:00 p.m., Mrs. Pugh asked for the c-section that Defendant Sabouni proposed two hours earlier; Defendant Sabouni declined, stating, "You're close, you can get him out."

67.     At said time, FHR baseline rate was 145, with variable decelerations, category II.

9

68.    At 9:02 p.m., "Pitocin [was] decreased to milliunits @ 14."

69.    At 9:14 p.m., Defendants noted, "Dr. Sabouni aware of fetal HR IV fluid bolus given."  Pitocin was decreased to milliunits at 12.

70.    At 9:30 p.m., FHR Baseline rate was 170, with minimal variability decelerations. "Actions for fetal decelerations- IV Bolus."

71.    An OB Provider Progress Note entered at 9:30 p.m. indicates, "Impression: **non reassuring fetal heart rate.**"

72.    The same OB Progress Note provides:

> patient was pushing from 7 till 8 o'clock then felt tired.  [H]ead
> came from station +1 to +2.  [S]top pushing from 8 till 8:30 then
> restart pushing.  [C]ontx q2-3m.  [FHR] cat 2 variable
> decelerations and at 9:39 sec[ond] to maternal exhaustion C/S was
> called while preparing for C/S patient was feeling urge to push and
> was pushing.

73.    An LD Flowsheet entry at 9:30 p.m. also notes that "C/s called by Dr. Sabouni. Charge nurse made aware, pt to keep pushing until OR team" can be assembled.

74.    Unfortunately, no c-section team showed up to deliver the baby.

75.    At 9:45 p.m., FHR baseline rate was elevated to 175, with baseline changes: "tachycardia."  Minimal variability and variable decelerations.

76.    At 10:00 p.m., Mrs Pugh was having contractions every 1½ minutes for 40-60 seconds in duration; FHR baseline rate was 165, with variable decelerations, category II.

77.    Still, however, no surgical team showed up to deliver the baby.

78.    In fact, the complete lack of response from an OR team was glaring; staff members in the delivery room were now murmuring amongst themselves as Mrs. Pugh lay exhausted from a prolonged labor.

79.     At 10:15 p.m. -- still with no surgical team appearing to intervene -- the baby's FHR was at **175**, with "baseline changes: Tachycardia", variable decelerations, Category II.

80.     At 10:30 p.m., the FHR baseline rate was at 165, with minimal variability, and variable decelerations; one hour after calling for a c-section, Defendant Sabouni performed a mediolateral episiotomy on both sides, and Mrs. Pugh continued to push.

81.     At 10:42 p.m. the baby's FHR Baseline rate was at 145, with minimal variability and variable decelerations.

82.     At 10:43 p.m., Baby Sean was delivered at 35 weeks.

83.     Sean was born 5 lbs. 10 oz. and in **profound distress**.

84.     He was born **limp and without a heart rate**.

85.     He had **no first gasp or spontaneous respirations**.

86.     **Apgar scores at 1, 5 and 10 minutes were "0"**.

87.     He was intubated, administered epinephrine x2, and cardiac compressions were instituted at 10:44 p.m.

88.     Sean's **heart rate was not detected until 20 minutes of age**.

89.     At 11:05 p.m., an "increase in heart rate and improvement in color" was noted, but the lack of oxygen to his brain had taken its toll.

90.     An neurologist later appeared in the delivery room and explained to Mr. and Mrs. Pugh that **Sean had suffered fetal acidemia and hypoxemia** and needed to be transferred to Lehigh Valley Hospital because his "**blood gases were not compatible with life.**"

91.     Imaging at 11:26 p.m. also revealed a left pneumothorax.

92.     At 2:00 a.m., Sean was transferred to Lehigh Valley Hospital, where he was admitted to the NICU.

11

93.     At 8:24 a.m., Mrs. Pugh asked "to be discharged today–patient feeling distress about the fetus situation".

94.     An MRI five days after Sean's birth showed **brain damage, and liver & kidney damage**.

95.     After spending several weeks in the NICU at Lehigh Valley Hospital, Sean was transferred to Good Shepherd Hospital on February 19, 2014.

96.     An MRI showed "hypoxic ischemic injury" and an EEG showed "diffuse cerebellar dysfunction".

97.     Over the ensuing several weeks, Sean was weaned from a feeding tube to oral (breast milk) feeding.

98.     He was discharged from Good Shepherd on March 12, 2014, with a diagnosis of "**severe perinatal asphyxia with multisystem involvement**" and "**global developmental delay**".

99.     Sean has since undergone extensive treatment with developmental pediatrics at CHOP, and has been diagnosed with moderate autism.

100.    Sadly, as a result of the entirely preventable fetal acidemia and hypoxemia, Sean has suffered permanent and debilitating injuries, including but not limited to developmental delay, and cognitive impairment and dysfunction.

101.    The negligence and/or carelessness of Defendants was due in no manner to any act or failure to act on the part of Plaintiffs.

## COUNT I – MEDICAL NEGLIGENCE
### PLAINTIFFS ASHLEY PUGH and DANIEL PUGH, Individually, and as Parents and Natural Guardians of SEAN PUGH, a Minor v. DEFENDANTS CHS, NHC, SEH, SHCS and SHCN

102.   Plaintiffs hereby incorporate the averments set forth in paragraphs 1-101, *supra*, as though fully set forth herein at length.

103.   As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh was caused to suffer serious and permanent injuries as set forth in greater detail below.

104.   The negligence and/or carelessness of Defendants, acting by and through their duly authorized agents, ostensible agents, servants, work persons and/or employees, consisted of the following:

    a.    Failure to properly manage a prolonged second stage of labor;

    b.    Failure to diagnose a non-reassuring FHR tracing indicating fetal acidemia and hypoxemia;

    c.    Failure to consider shortening the second stage of labor with operative vaginal delivery;

    d.    Failure to perform timely caesarian section if operative vaginal delivery was deemed not feasible;

    e.    Failure to recognize the inappropriate use of Pitocin in setting of category II and category III FHR tracing;

    f.    Failure to recognize and manage loss of FHR variability and fetal tachycardia in setting of fetal prematurity and prolonged second stage of labor;

    g.    Failure to adequately staff the hospital with surgeons to perform stat c-section delivery;

    h.    Increasing the risk of harm to Sean; and

    i.    Depriving Sean of the opportunity to be cured.

105.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh was caused to suffer, *inter alia*, fetal acidemia; hypoxemia; permanent developmental delay and cognitive impairment; speech and behavioral pathology; autism; physical growth impairment; cardiac murmur; dilated aortic root; physical and emotional pain and suffering; aggravation and/or exacerbation of all known and unknown pre-existing medical conditions; and a severe shock to his entire nervous system and other injuries, the full extent of which is not known.

106.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, an inability to perform his usual and daily duties, labors, occupations and avocations.

107.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiffs have been, and may in the future be, required to expend various and diverse sums of money in an effort to treat Sean's injuries and provide care for him.

108.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has been, and may in the future be, required to undergo significant medical care, evaluation, therapy, treatment, costly medications and invasive and painful medical procedures and surgeries in an effort to treat his injuries and provide care for him.

109.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, a loss and/or limitation of earnings and earning potential.

110.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, a loss of leisure time, a loss of life's pleasures, and a diminished quality of life.

WHEREFORE, Plaintiffs, Ashley Pugh and Daniel Pugh, individually, and as parents and natural guardians of Sean Pugh, a minor, demand judgment in their favor and against Defendants, for special and compensatory damages in an amount in excess of One Hundred and Fifty-Thousand Dollars ($150,000.00), plus the statutory rate of interest, costs and related expenses, and such other just and equitable relief as this Honorable Court deems proper.

**COUNT II – MEDICAL NEGLIGENCE**
**PLAINTIFFS ASHLEY PUGH and DANIEL PUGH, Individually, and as Parents and Natural Guardians of SEAN PUGH, a Minor v. DEFENDANTS NCC and SMG**

111.    Plaintiffs hereby incorporate the averments set forth in paragraphs 1-110, *supra*, as though fully set forth herein at length.

112.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh was caused to suffer serious and permanent injuries as set forth in greater detail below.

113.    The negligence and/or carelessness of Defendants, acting by and through their duly authorized agents, ostensible agents, servants, work persons and/or employees, consisted of the following:

    a.    Failure to properly manage a prolonged second stage of labor;

    b.    Failure to diagnose a non-reassuring FHR tracing indicating fetal acidemia and hypoxemia;

    c.    Failure to consider shortening the second stage of labor with operative vaginal delivery;

    d.    Failure to perform timely caesarian section if operative vaginal delivery was deemed not feasible;

    e.    Failure to recognize the inappropriate use of Pitocin in setting of category II and category III FHR tracing;

    f.    Failure to recognize and manage loss of FHR variability and fetal tachycardia in setting of fetal prematurity and prolonged second stage of labor;

g.      Increasing the risk of harm to Sean; and

h.      Depriving Sean of the opportunity to be cured.

114.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh was caused to suffer, *inter alia*, fetal acidemia; hypoxemia; permanent developmental delay and cognitive impairment; speech and behavioral pathology; autism; physical growth impairment; cardiac murmur; dilated aortic root; physical and emotional pain and suffering; aggravation and/or exacerbation of all known and unknown pre-existing medical conditions; and a severe shock to his entire nervous system and other injuries, the full extent of which is not known.

115.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, an inability to perform his usual and daily duties, labors, occupations and avocations.

116.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiffs have been, and may in the future be, required to expend various and diverse sums of money in an effort to treat Sean's injuries and provide care for him.

117.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has been, and may in the future be, required to undergo significant medical care, evaluation, therapy, treatment, costly medications and invasive and painful medical procedures and surgeries in an effort to treat his injuries and provide care for him.

118.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, a loss and/or limitation of earnings and earning potential.

119.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, a loss of leisure time, a loss of life's pleasures, and a diminished quality of life.

WHEREFORE, Plaintiffs, Ashley Pugh and Daniel Pugh, individually, and as parents and natural guardians of Sean Pugh, a minor, demand judgment in their favor and against Defendants, for special and compensatory damages in an amount in excess of One Hundred and Fifty-Thousand Dollars ($150,000.00), plus the statutory rate of interest, costs and related expenses, and such other just and equitable relief as this Honorable Court deems proper.

## COUNT III – MEDICAL NEGLIGENCE
### PLAINTIFFS ASHLEY PUGH and DANIEL PUGH, Individually, and as Parents and Natural Guardians of SEAN PUGH, a Minor v. DEFENDANT DOUHA SABOUNI, M.D.

120.    Plaintiffs hereby incorporate the averments set forth in paragraphs 1-119, *supra*, as though fully set forth herein at length.

121.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh was caused to suffer serious and permanent injuries as set forth in greater detail below.

122.    The negligence and/or carelessness of Defendants, acting by and through their duly authorized agents, ostensible agents, servants, work persons and/or employees, consisted of the following:

    a.      Failure to properly manage a prolonged second stage of labor;

    b.      Failure to diagnose a non-reassuring FHR tracing indicating fetal acidemia and hypoxemia;

    c.      Failure to consider shortening the second stage of labor with operative vaginal delivery;

    d.      Failure to perform timely caesarian section if operative vaginal delivery was deemed not feasible;

e. Failure to recognize the inappropriate use of Pitocin in setting of category II and category III FHR tracing;

f. Failure to recognize and manage loss of FHR variability and fetal tachycardia in setting of fetal prematurity and prolonged second stage of labor;

g. Increasing the risk of harm to Sean; and

h. Depriving Sean of the opportunity to be cured.

123. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh was caused to suffer, *inter alia*, fetal acidemia; hypoxemia; permanent developmental delay and cognitive impairment; speech and behavioral pathology; autism; physical growth impairment; cardiac murmur; dilated aortic root; physical and emotional pain and suffering; aggravation and/or exacerbation of all known and unknown pre-existing medical conditions; and a severe shock to his entire nervous system and other injuries, the full extent of which is not known.

124. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, an inability to perform his usual and daily duties, labors, occupations and avocations.

125. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiffs have been, and may in the future be, required to expend various and diverse sums of money in an effort to treat Sean's injuries and provide care for him.

126. As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has been, and may in the future be, required to undergo significant medical care, evaluation, therapy, treatment, costly medications and invasive and painful medical procedures and surgeries in an effort to treat his injuries and provide care for him.

127.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, a loss and/or limitation of earnings and earning potential.

128.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, a loss of leisure time, a loss of life's pleasures, and a diminished quality of life.

**COUNT IV – NEGLIGENCE**
**PLAINTIFFS ASHLEY PUGH and DANIEL PUGH, Individually, and as Parents and**
**Natural Guardians of SEAN PUGH, a Minor v. DEFENDANTS CHS, NHC, SHE & SHCS**

129.    Plaintiffs hereby incorporate the averments set forth in paragraphs 1-128, *supra*, as though fully set forth herein at length.

130.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh was caused to suffer serious and permanent injuries as set forth in greater detail below.

131.    The negligence and/or carelessness of Defendants, acting by and through their duly authorized agents, ostensible agents, servants, work persons and/or employees, consisted of the following:

    a.    Failure to exercise reasonable care in the maintenance of safe and adequate facilities and equipment;

    b.    Failure to properly select and retain only competent and qualified medical personnel;

    c.    Failure to render reasonable care by failing to properly oversee/ supervise personnel assisting in the provision of care to patients, including Plaintiffs;

    d.    Failure to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients, including Plaintiffs;

    e.    Failure to implement a budget that properly funded Easton Hospital to allow the facility to provide adequate and appropriate care to Plaintiffs, including adequate staff and medical equipment and supplies; and

19

f.  Knowingly operating an understaffed medical facility so as to maximize profits at the expense of the well being of patients, including Plaintiffs.

132.  As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh was caused to suffer, *inter alia*, fetal acidemia; hypoxemia; permanent developmental delay and cognitive impairment; speech and behavioral pathology; autism; physical growth impairment; cardiac murmur; dilated aortic root; physical and emotional pain and suffering; aggravation and/or exacerbation of all known and unknown pre-existing medical conditions; and a severe shock to his entire nervous system and other injuries, the full extent of which is not known.

133.  As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, an inability to perform his usual and daily duties, labors, occupations and avocations.

134.  As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiffs have been, and may in the future be, required to expend various and diverse sums of money in an effort to treat Sean's injuries and provide care for him.

135.  As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has been, and may in the future be, required to undergo significant medical care, evaluation, therapy, treatment, costly medications and invasive and painful medical procedures and surgeries in an effort to treat his injuries and provide care for him.

136.  As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, a loss and/or limitation of earnings and earning potential.

137.    As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Sean Pugh has suffered, and may in the future suffer, a loss of leisure time, a loss of life's pleasures, and a diminished quality of life.

WHEREFORE, Plaintiffs, Ashley Pugh and Daniel Pugh, individually, and as parents and natural guardians of Sean Pugh, a minor, demand judgment in their favor and against Defendants, for special and compensatory damages in an amount in excess of One Hundred and Fifty-Thousand Dollars ($150,000.00), plus the statutory rate of interest, costs and related expenses, and such other just and equitable relief as this Honorable Court deems proper.

**VILLARI, LENTZ & LYNAM, LLC**

THOMAS A. LYNAM, III, ESQUIRE
LEONARD G. VILLARI, ESQUIRE
Attorney I.D. Nos.: 83817/68844
100 North 20th Street
Suite 302
Philadelphia, PA 19103
P: 215-568-1990
F: 215-568-9920
Email: tlynam@vll-law.com/lgvillari@aol.com
*Attorneys for Plaintiffs*

Date: February 3, 2020