**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ASHLEY PUGH AND DAVID PUGH, INDIVIDUALLY, AND AS PARENTS AND NATURAL GUARDIANS OF SEAN PUGH, A MINOR,<br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., *et al.*,<br>　　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:  Civil No. 5:20-cv-00630<br>:<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM OPINION**

**Timothy R. Rice**                                                                                  **January 8, 2021**
**U.S. Magistrate Judge**

　　　　This case provides a classic example of how discovery gamesmanship can backfire.

　　　　Plaintiffs Ashley and David Pugh seek sanctions against Defendants Northampton Hospital Company and Northampton Clinic Company for failing to produce critical records relating to an alleged delay in delivering their son.  Mot. for Sanctions (doc. 43).  After the Pughs first requested hospital records in April 2020, the Northampton Defendants stonewalled, blanketly asserting that the straightforward interrogatories were somehow "vague, ambiguous, overly broad and unduly burdensome."  Hosp. Resp. to Mot. to Comp. (doc. 41), Exs. A-B, Resp. to Discovery (doc. 41-1).  In so doing, Defendants missed a critical opportunity to secure key documents concerning Plaintiffs' theory of liability.  By July 2020, ownership of the hospital had transferred, and Defendants claim that with the sale, they lost access to the documents.[1]

---

[1]　　　Defendants claim that the hospital where the alleged negligence occurred was transferred to Steward Heath Care Systems and Network in May 2017.  See Hosp. Resp. to Mot. for Sanctions (doc. 46) ¶ 6.  Plaintiffs initially sued Steward but the parties later stipulated to Steward's dismissal because it did not own the hospital at the time of the alleged negligence.

Defendants then ignored an order compelling them to produce or at least account for the requested discovery. See 9/17/20 Order (doc. 42). They now blame uncooperative third parties for this predicament. Nothing could be further from the truth.

The Pughs argue the Northampton Defendants are responsible for the lost documents and seek the following sanctions: 1) a direction that their allegations of undue delay in delivering their son have been established for the purposes of litigation; 2) a direction that the undue delay was a proximate cause of their son's injuries for the purposes of litigation; and 3) $500.00 for attorneys' fees and costs related to litigating this motion. Mot. for Sanctions at 7.

I grant the Pughs' motion in part by directing that their allegations of undue delay in the delivery of their son are established as to the Northampton Defendants.[2] I also award Plaintiffs $500.00 for attorneys' fees and costs for litigating this motion. The issue of causation is unrelated to the absence of records and shall be decided by the jury.

I.   Discussion

I have "sound discretion" to sanction a party under Federal Rule of Civil Procedure 37(b)(2) for failing to comply with a discovery order.[3] DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). I may: 1) direct "that the matters embraced in the order or

---

See id. n.1. On July 1, 2020, Steward ceased operation of the hospital and transferred ownership to St. Luke's University Hospital Network. Id. at 3. Defendants claim that the hospital's risk manager was not retained during this sale, impeding its efforts to obtain documents from St. Luke's. Id.

[2]   My Order does not apply to Defendant Dr. Douha Sabouni and there is no finding that Dr. Sabouni was responsible for any undue delay in medical treatment.

[3]   I need not determine whether the missing information was stored in electronic or other form because Defendants' failure would be treated similarly under long-standing spoliation case law and Rule 37(e), which was designed to codify the standard for electronically-stored information. See Bistrian v. Levi, 448 F. Supp. 3d 454, 474 (E.D. Pa. 2020); see also Clientron Corp. v. Devon IT, Inc., 894 F.3d 568, 577 (3d Cir. 2018).

other designated facts be taken as established for purposes of the action"; 2) prohibit "the disobedient party from supporting or opposing the claims or defense, or from introducing designated matters in evidence"; or 3) order the disobedient party "to pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2); see also Toner v. Wilson, 102 F.R.D. 275, 276 (M.D. Pa. 1984) (Rule 37 is meant "to penalize a party who violates a discovery order and to deter future violations of discovery orders").  In determining whether sanctions are appropriate, I consider: 1) the prejudice to Plaintiffs; 2) the ability to cure the prejudice; 3) the extent to which the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and 4) the defendants' bad faith or willfulness in violating the court's order.  Wachtel v. Health Net, Inc., 239 F.R.D. 81, 105 (D. N.J. 2006).

   1. Prejudice

The Northampton Defendants were put on notice of their obligation to identify and hold any relevant documentation no later than February 2020, when the Pughs' lawsuit was filed.  See McDevitt v. Verizon Servs. Corp., No. CV 14-4125, 2016 WL 1072903, at *2 (E.D. Pa. Feb. 22, 2016), report and recommendation adopted, No. CV 14-4125, 2016 WL 1056702 (E.D. Pa. Mar. 17, 2016) ("the duty to preserve material evidence arises not only during litigation but also extends to that period before litigation 'when a party should have known that the evidence may be relevant to future litigation'") (citing Major Tours, Inc. v. Colorel, 2009 U.S. Dist. LEXIS 68128 at *8 (D. N.J. Aug. 4, 2009)).  They had an express obligation to provide documents upon receiving the Pughs' discovery requests in April 2020.  Mot. ¶ 4; Hosp. Resp. ¶ 4.  Defendants, however, responded with multiple objections and only some of the requested documents in June 2020.  See Resp to Discovery (doc. 41-1).

Upon finding that information was missing from Defendants' responses, the Pughs sent a deficiency letter and additional discovery requests on July 30, 2020.  Mot. ¶ 6, Exs. 1, 2.  After receiving no response, the Pughs filed a motion to compel on September 9, 2020.  See Mot. to Compel (doc. 40).  On September 17, 2020, I granted the motion to compel and ordered Northampton Defendants to either produce the requested documents or certify that they do not exist, by November 2, 2020.  See 9/17/2020 Order.  Northampton Defendants never produced documents or certifications to the Pughs, violating my Order.  Further, upon finally corresponding with the Pughs in late December 2020, they asserted that the new owner of the hospital claimed to be unable to access the requested documents.  See Mot., Ex. 4, 12/23/2020 Email.

Had Defendants begun to collect documents after the lawsuit was filed in February 2020 or responded in good faith to Plaintiffs' discovery requests in spring 2020, they likely could have accessed the requested documents before the July 2020 sale of the hospital.  Moreover, Defendants' conduct prejudiced the Pughs, who seek to prove that Defendants' failure to provide a timely caesarian section caused their son's birth injuries.  Compl. (doc. 1) ¶¶ 73-82.

According to the Pughs, they requested a caesarian section but did not have one because no staff appeared to perform it.  Id. ¶¶ 66, 77.  Thus, the Pughs' case will be significantly prejudiced without access to hospital documents identifying staff who worked during this time period, information about potential staff shortages or delay, timesheets, policies and procedures, and documents showing the assembly of staff who delivered their son.  Mot., Ex. 1, Plaintiffs' Second Set of Interrogatories and Request for Production of Documents.  These documents have the potential to show whether the delay was due to inadequate staffing or another factor, essential evidence in this matter.

2. Cure

Northampton Defendants argue the Pughs can cure this prejudice by deposing relevant medical providers. Supp. Resp. to Mot. (doc. 52) at 4. I disagree. Depositions are an expensive alternative to producing documents, and witness testimony regarding the exact times they worked in 2014 are likely to be far less reliable than the requested documents. See Scarborough v. Eubanks, 747 F.2d 871, 876 (3d Cir. 1984) (a failure to timely respond to discovery can cause prejudice including "the inevitable dimming of witness' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party"). Defendants rely only on Weller v. Dollar Gen. Corp., No. 17-2292, 2019 WL 1045960 (E.D. Pa. Mar. 4, 2019) to bolster this argument. In Weller, I sanctioned the defendants for ex parte communications with putative class members. Id. at *4. The depositions in that case remedied the prejudice suffered by plaintiffs by giving them access to the employees, who had signed affidavits without being subject to cross examination or interview. Id. In contrast, Northampton Defendants request depositions as a substitution for gathering information it was obligated to preserve, far different circumstances than those in Weller. Here, depositions would not cure the prejudice caused by Defendants' failure to preserve and produce the requested documents.

3. Willful or Bad Faith Conduct.

A party acts in bad faith "by delaying or disrupting the litigation or by hampering enforcement of a court order." Chambers v. NASCO, Inc., 501 U.S. 32, 33 (1991). Although the Northampton Defendants demonstrated an unwillingness to seriously conduct discovery, I do not find that they or their counsel acted in bad faith. Nevertheless, I also find sanctions are warranted because of the severe prejudice to the Pughs and the lack of a fair cure. See Estate of Spear v. C.I.R., 41 F.3d 103, 116 (3d Cir. 1994) (imposing sanctions without bad faith requires a

strong showing of prejudice); Wachtel, 239 F.R.D. at 103 (although bad faith enhances the need for sanctions, it is not a prerequisite).

II.     Conclusion

After weighing the determinative factors, I find that sanctions are warranted against Defendants due to their failure to timely obtain the documents and the prejudice to the Pughs, who should not bear the burden of their loss. I can remedy this imbalance of access to pertinent discovery by finding that the allegation of undue delay that the documents might have supported has been established. Fed. R. Civ. P. 37(b)(2)(A)(i-ii). I also order Northampton Defendants to pay $500.00 for the costs associated with litigating this motion. Fed. R. Civ. P. 37(b)(2)(C).[4]

BY THE COURT:

 /s/ Timothy R. Rice

TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE

---

[4] On January 6, 2020, Plaintiffs filed a letter requesting I postpone deciding this motion for thirty days while they work with Community Health System Inc.'s counsel to obtain the requested documents. 1/6/2020 Letter (doc. 51). If Defendants produce the outstanding discovery within thirty days of this Order, I will vacate my direction establishing the undue delay, but Northampton Defendants shall still pay $500.00 for the costs associated with litigating this motion.