IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHLEY PUGH AND DAVID PUGH, INDIVIDUALLY, AND AS PARENTS AND NATURAL GUARDIANS OF SEAN PUGH, A MINOR,<br>   Plaintiffs,<br><br>   v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., *et al.*,<br>   Defendants. | Civil No. 5:20-cv-00630 |

## MEMORANDUM OPINION

**Timothy R. Rice**                              **July 7, 2021**
**U.S. Magistrate Judge**

   Requests for admission aim to expedite trial. Sadly, that has not happened here. Instead, the parties continue to misuse the discovery process in a case already plagued by discovery hostilities.

   Plaintiffs Ashley and David Pugh contest Defendants Northampton Hospital Company and Northampton Clinic Company's responses to their Requests for Admission. Pl. Mot. (doc. 68). On May 5, 2021, the Pughs submitted Requests for Admission to the Northampton Defendants, which responded with answers and objections on June 4, 2021. Id. at 2; Def. Resp. (doc. 70). The Pughs contend the Northampton Defendants "groundlessly objected to, evaded, and/or provided insufficient answers" to requests numbered 5-8, 11, 19-22, and 25-30, and request I deem those responses admitted or order the Northampton Defendants to amend them. Id. The Northampton Defendants argue that I may not rule on the accuracy of their responses and that the Requests for Admission were improper. See Def. Resp. I grant the Pughs' motion in part and deny in part.

I.     Discussion

A party may serve requests for admission upon an opposing party relating to "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a); Caruso v Coleman Co., No. 93-6733, 1995 WL 347003, at *6 (E.D. Pa. Jun. 7, 1995) (purpose of requests for admissions is "for the parties to determine if they agree on particular facts, consequently narrowing or eliminating issues"). A request for admission "should be in simple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification." United Coal Companies v. Powell Const. Co., 839 F.2d 958, 967-68 (3d Cir. 1988) (quoting Havenfield Corp. v. H & R Block, Inc., 67 F.R.D. 93, 96 (W.D. Mo. 1973)). If the answering party does not admit the request for admission, its answer "must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Id.

When a party objects to a request for admission, it must offer specific reasons for doing so. Josephs v. Harris Corp., 677 F.2d 985, 992 (E.D. Pa. 1982). Objections cannot stem from "hair-splitting distinctions that frustrate the purpose of the Request," or because of an "unwarranted inference created by a request for admission taken out of context." Duchesneau v. Cornell Univ, No. 08-4856, 2010 WL 4117753, at *2 (E.D. Pa. Oct. 19, 2010) (citations omitted).

Objections are appropriate to challenge requests for admission of a "legal conclusion that is one of the ultimate issues of the case." Id. at *3 (quoting McCarthy v. Darman, No. 07-3968, 2008 WL 2468694, at *1 (E.D. Pa. Jun. 17, 2008)). However, "answers that appear to be non-specific, evasive, ambiguous, or that appear to go to the accuracy of the requested admissions rather than the essential truth contained therein are impermissible and must be amended." Id. (quoting McCarthy, 2008 WL 2468694, at *2).

When the answering party objects to the request for admission, "the requesting party can seek a judicial determination of the objection's sufficiency." Id. To determine sufficiency of objections or responses to requests for admission, I consider whether: "1) the denial fairly meets the substance of the Request; 2) good faith requires that the denial be qualified; and 3) any 'qualification' which has been supplied is a good faith qualification." Id. (quoting McCarthy 2008 WL 2468694, at *2.

A. Improper Requests by the Pughs—Evidence Possession

Request Numbers 5-6, 20-22, and 25-28 ask the Northampton Defendants to admit they have no evidence of certain facts. Using requests for admission to force a party to quantify its evidence is inconsistent with Rule 36(a)'s intent of identifying undisputed issues of fact for trial. 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2253 (1970) (request for admission is "a procedure for obtaining admissions for the record of facts already known by the seeker"); see Langer v. Monarch Life Ins. Co., 966 F.2d 786, 803 (3d Cir. 1992) ("admission of facts made under Rule 36 is an 'unassailable statement of fact that narrows the triable issues in the case'") (citing Langer v. Monarch Life Ins. Co., 966 F.2d 786, 803 (3d Cir. 1992)). Further, if a party phrases requests for admission in such a manner, the requests may be denied merely by citing to evidence. See United States v. Chevron U.S.A., Inc., No. 88-6681, 1989 WL 100927, at *2 (E.D. Pa. 1989) (requests for admission should not be used "unless the statement can be admitted or denied without explanation").

Request Number 5 asks Northampton Defendants to admit they have no evidence to suggest that Ashley Pugh and Scott Winikoff, M.D. ever met before Ms. Pugh's January 2014 admission to Easton Hospital. Pl. Mot. at 4. The Northamptom Defendants deny this request. Because this denial was improper, I amend the request to ask if the Northampton Defendants

3

admit if they have knowledge of encounters between Ms. Pugh and Dr. Winikoff before Pugh's January 2014 admission to Easton Hospital. The Northampton Defendants shall respond to the Pughs within seven days of this Opinion's filing.

Request Number 6 seeks the Northampton Defendants' admission that they have no evidence suggesting Ms. Pugh selected Dr. Winikoff to provide her with anesthesia. The Northampton Defendants deny this request, citing Dr. Winikoff's deposition. The Pughs contend that the denial was evasive and insufficient. Pl. Mot. at 5-6. I disagree. Although the request was poorly framed because it asked the Northampton Defendants to confirm a lack of evidence, the Northampton Defendants' denial responded to that request.

In Request Number 20, the Pughs seek the Northampton Defendants' admission they have no evidence to establish a person was assigned to supervise the overnight shift. The Northampton Defendants deny that statement, citing the contents of a document labeled Bates 5774 and supervisor Deb Bush's testimony that there is always a shift supervisor. Pl. Mot. at 11. This denial was proper based on the request.

In Request Numbers 21-22, the Pughs ask the Northampton Defendants to admit that they have no evidence to establish personnel was in place to receive Dr. Sabouni's call for a cesarean section or to establish personnel on the "OR SHEET FOR WEEKNIGHTS" were notified of her call. The Northampton Defendants deny these statements, listing personnel who were in the hospital and citing Ms. Pugh's testimony that there were at least two nurses present in her room. Id. at 11-12. This denial was proper.

In Request Number 25, the Pughs ask the Northampton Defendants to admit they have no evidence to refute Dr. Winikoff's testimony that he did not receive a call from Dr. Sabouni notifying him of a cesarian section for Ms. Pugh. The Northampton Defendants deny this

statement, explaining that Dr. Winikoff testified he did not recall Dr. Sabouni's call and he did not have any documentation of the call. Id. at 13-14. The Northampton Defendants fail to cite Dr. Winikoff's testimony that he "was not notified that there was a C-section at 9:30," Pl. Mot. Ex. 4, Winikoff Dep. 35:10-36:20. This debate illustrates the problems that arise when requests are not properly framed to seek a simple answer. The nuances of Dr. Winikoff's testimony is not a proper subject for requests for admission. The parties can debate the contents of Dr. Sabouni's testimony at trial. The Northampton Defendants' denial was proper.

In Request Number 26, the Pughs ask the Northampton Defendants to admit they have no evidence to refute Dr. Sabouni's testimony that she asked if the operating room was ready for a cesarean section at 9:30 p.m. and was told it was not ready. The Northampton Defendants deny this statement, citing evidence from Dr. Sabouni's note and listing personnel present who would have been ready to perform a cesarean section. Pl. Mot. at 14-15. This denial was proper.

In Request Number 27, the Pughs ask the Northampton Defendants to admit that they have no evidence to refute Dr. Sabouni's testimony that she would have performed the cesarian section had she been notified that the operating room was ready. The Northampton Defendants again deny the statement, citing evidence from Dr. Sabouni's note and listing personnel present who would have been ready to perform a cesarean section. Id. at 16. Although the Northampton Defendants fail to cite evidence that relates to the Pughs' request, their response was proper. Requests for admission are not appropriate to determine if a party lacks impeachment evidence. Dr. Sabouni's testimony can be tested at trial.

B. Improper Request by Pughs—Ultimate Issue

In Request Numbers 29-30, the Pughs request the Northampton Defendants to admit that their failure to assemble an operating team delayed the delivery of Sean Pugh, and that delay

5

increased the risk of harm to Sean.  The Northampton Defendants object, arguing that requests for admission cannot call for a case's ultimate issue.  Pl. Mot. at 17-18.  I agree.

Requests for admission are not proper "for a conclusion of one of the ultimate issues of the case."  McCarthy, 2008 WL 2468694, at *1.  Only the jury can decide if the Northampton Defendants delayed the delivery of Sean Pugh and if that delay increased his risk of harm, the two seminal issues of this litigation.

C.  Insufficient Responses by Northampton Defendants Requiring Amended Response

In Requests Numbers 7 and 8, the Pughs ask the Northampton Defendants to admit Dr. Winikoff was an agent of Easton Hospital and the Northampton Hospital Company, LLC d/b/a Easton Hospital.  The Northampton Defendants object on the grounds that these questions seek legal conclusions on one of the ultimate issues of the case.  Pl. Mot. at 6-8.  I disagree.

The ultimate issue of this case is whether defendants were negligent in delivering Sean Pugh, not whether Dr. Winikoff was an agent of Easton Hospital.  The Northampton Defendants must admit the agency relationship, or deny the request and explain what relationship, if any, Dr. Winikoff, had with Easton Hospital, within seven days of this Opinion.

D.  Responses by Northampton Defendants Deemed Admitted

In Request Number 11, the Pughs request the Northampton Defendants admit they failed to produce an incident report regarding Sean Pugh.  The Northampton Defendants deny the statement, asserting "incident report" is not the proper terminology for its Serious Safety Event Reporting, and even if the Pughs had used the correct title, that Report is protected by various peer review laws already litigated in this case.  See Mot. to Compel Dr. Sabouni's Notes (doc. 66); 5/17/2021 Order (doc 67).  I deem this request admitted.

First, the objection features an improper "hair-splitting distinction."  Duchesneau, 2010

WL 4117753, at *2. Gamesmanship has no place is the discovery process, Pugh v. Community Health Systems, No. 20-630, 2021 WL 75805 (E.D. Pa. Jan. 8, 2021). Second, the Northampton Defendants state they did not provide any such report because of statutory protections. This constitutes an admission that they failed to produce the report. Even if the Northampton Defendants believe the word "fail" is improper, "unwarranted inferences created by a request for admission taken out of context" are not grounds for objection. Duchesneau, 2010 WL 4117753, at *2.

In Request Number 19, the Pughs request the Northampton Defendants admit or deny they cannot identify who, if anyone, supervised the 3:00-11:00 p.m. shift at the hospital on January 23, 2014. The Northampton Defendants deny the statement, but explain "at present, counsel, through former hospital employees cannot identify the name of the nightshift supervisors from 3-11 back in the January 2014 time frame." Pl. Mot. at 10-11. Because the Northampton Defendants admit they cannot identify the name of the nightshift supervisors from the relevant time, I deem this statement admitted without the Northampton Defendants' qualification.

In Request Number 28, the Pughs request the Northampton Defendants to admit they failed to assemble an operating team following Dr. Sabouni's call for a cesarian section. The Northampton Defendants deny this statement, explaining they did not construct an operating team because Ms. Pugh wanted the cesarian section due to maternal exhaustion and that she made "continuous progress pushing until a vaginal delivery with episiotomy was accomplished." Pl. Mot. at 16-17. Because the Northampton Defendants admit they did not assemble an operating team following Dr. Sabouni's call for a cesarian section, I deem this statement admitted. To the extent the Northampton Defendants object that they "failed" to assemble an

operating team, "unwarranted inferences created by a request for admission taken out of context" are not grounds for objection. Duchesneau, 2010 WL 4117753, at *2.

BY THE COURT:

 /s/ **Timothy R. Rice**

TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE