IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY PUGH, *et al.*, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 5:20-cv-00630-JMG |
| | : | |
| COMMUNITY HEALTH SYSTEMS, INC., *et al.*, | : | |
|     Defendants. | : | |

MEMORANDUM OPINION

**GALLAGHER, J.**                                                                                                            July 17, 2023

      Plaintiffs Ashley Pugh and Daniel Pugh, individually and as parents and guardians of Minor-Plaintiff Sean Pugh, bring professional negligence/medical malpractice claims against Northampton Hospital Company, LLC d/b/a/ Easton Hospital ("Easton Hospital"); Northampton Clinic Company, LLC d/b/a Easton Area Obstetrics & Gynecology Associates ("EAOG"); and Douha Sabouni, M.D. *See* Am. Compl., ECF No. 80.  Plaintiffs allege Defendants committed medical negligence during Mrs. Pugh's delivery of her son, Sean Pugh.  As a result of Defendants' negligence, Plaintiffs allege Sean suffers various injuries, including, inter alia, hypoxia and HIE-related brain damage, neurodevelopmental abnormalities of autism and other impairments.

      On May 10, 2023, the Court precluded Plaintiffs' proffered expert Sarah Mulkey, M.D., Ph.D. from offering causation testimony regarding the alleged cause of Sean Pugh's autism at trial. In sum, the Court found Dr. Mulkey did not provide a reliable methodology or basis to support her causation opinions.  Now before the Court is Plaintiffs' Motion for Reconsideration of the Court's May 10, 2023 Order; and, in the alternative, Request to Amend the Court's Order Pursuant to 28 U.S.C. § 1292(b) to Certify Interlocutory Appeal.  For the following reasons, Plaintiffs' Motion

for Reconsideration, and in the alternative, Request to Amend the Court's Order to Certify Interlocutory Appeal is denied.

1.  **FACTUAL BACKGROUND**

Plaintiffs Ashley Pugh and Daniel Pugh, individually and as parents and guardians of Minor-Plaintiff Sean Pugh bring professional negligence/medical malpractice claims against Defendants Easton Hospital, EAOG, and Dr. Sabouni. *See* Am. Compl., ECF No. 80. In sum, Plaintiffs allege Defendants acted negligently when providing services to Mrs. Pugh during her delivery of Sean. *See generally id.* In support of Plaintiffs' claims, they proffered Sarah Mulkey, M.D., Ph.D. as a causation expert.

On February 3, 2023, Defendants Easton Hospital and EAOG moved to preclude Plaintiffs' causation testimony regarding the alleged cause of Sean Pugh's autism under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). *See generally* ECF No. 125. Defendant Dr. Sabouni also moved to preclude Plaintiffs' expert from offering any causation testimony regarding the alleged cause of Sean Pugh's Autism.[1] Like Easton Hospital and EAOG's *Daubert* motion, Dr. Sabouni moved to preclude Dr. Mulkey's causation testimony as Plaintiffs' "sole causation expert."[2] In sum, Defendants contended Dr. Mulkey's conclusions Sean's "autism was caused by neonatal encephalopathy/hypoxic ischemic encephalopathy (NIE/HIE) are unreliable under the

---

[1] ECF No. 118 at 2. And, and in the alternative, Dr. Sabouni requested a *Daubert* hearing. *Id.*

[2] ECF No. 118 at 7. Dr. Sabouni also moved to join and/or adopt and incorporate Easton Hospital and EAOG's related *Daubert* and summary judgment motion. *See generally* ECF No. 126. On May 10, 2023, the Court granted Dr. Sabouni's motion concerning Easton Hospital and EAOG's *Daubert* and summary judgment motion. ECF No. 159.

case law and state of medical literature."[3] And thus, Defendants submitted, Plaintiffs could not "establish that []NE/HIE[] generally causes autism or that . . . NE/HIE specifically caused [Sean Pugh's] autism." ECF No. 125 at 4.

Plaintiffs responded in opposition to both *Daubert* motions with similar contentions.[4] Plaintiffs averred, inter alia, Dr. Mulkey's causation testimony is sufficiently reliable because studies show perinatal hypoxia/HIE is strongly associated with and/or increases the risk of autism. ECF No. 132 at 24. Plaintiffs contended Dr. Mulkey's general causation argument is consistent with Pennsylvania's causation standard in medical malpractice actions. *See* ECF No. 137 at 6-7. Plaintiffs also submitted "relevant case law . . . firmly support an inference that HIE/NE could have caused Sean's autism." ECF No. 132 at 41 (emphasis in original). So, "Dr. Mulkey's causation opinions . . . rest on reliable methodologies and have reliable bases . . . ." *Id.* at 42.

On May 10, 2023, the Court (1) granted Defendant Dr. Sabouni's motion to preclude any of Plaintiffs' experts from offering causation testimony regarding the alleged cause of Sean Pugh's

---

[3] ECF No. 125 at 4. Hypoxic ischemic injury such as hypoxic ischemic encephalopathy (HIE) "is a type of brain dysfunction (brain injury) that occurs when the brain experiences a decrease in oxygen or blood flow" and "can occur before birth, during labor and delivery or after birth." *Hypoxic Ischemic Encephalopathy: Causes and Symptoms*, MASS GENERAL FOR CHILDREN (Mar. 1, 2022), https://www.massgeneral.org/children/hypoxic-ischemic-encephalopathy#:~:text= Hypoxic%20ischemic%20encephalopathy%20(HIE)%20is,and%20delivery%20or%20after%20 birth. The Court also notes "Neonatal encephalopathy [(NE)] is clinically defined as a syndrome characterized by disturbed neurologic function occurring in the earliest days of an infant born at or beyond 35 weeks of gestation." ECF No. 118 at 7-8. At Dr. Mulkey's discovery deposition on September 21, 2022, she provided the preferred term for HIE is NE because there are different presentations of NE that may be for reasons other than HIE. *See* ECF No. 125-12, Mulkey Dep. Tr. 46:2-22. So "neonatal encephalopathy is . . . the big umbrella term under which there are babies that have neonatal encephalopathy because of hypoxia ischemia." *Id.*

[4] *See generally* ECF Nos. 132, 137. Plaintiffs raised contentions similar in substance concerning all Defendants' motions to preclude Dr. Mulkey's causation testimony. Accordingly, the Court considered the motions in concert. *See* ECF No. 160 at 11 n. 15.

autism at trial, and (2) granted in part Defendants Easton Hospital and EAOG's *Daubert* motion to exclude Plaintiffs' causation testimony regarding the alleged cause of minor Plaintiff's autism. ECF No. 159. The Court also granted Dr. Sabouni's motions to join Defendants Easton Hospital and EAOG's *Daubert* and summary judgment motion. *See id.*

In sum, the Court granted Defendants' *Daubert* motions concerning Dr. Mulkey's causation testimony due to Dr. Mulkey's unreliable methodology. Dr. Mulkey's methodology involved a review of a "sample" of the literature—only including studies Dr. Mulkey found consistent with an increased risk and/or association between HIE/NE and autism/ASD—and "her 'general knowledge of the literature' to support her general causation/association opinion." *See* Mem. Op., ECF No. 160 at 25 (citing ECF No. 125-9 at 10) (Dr. Mulkey September 29, 2021 expert report). The Court also found Dr. Mulkey's general causation/association opinion insufficient because "Dr. Mulkey's expert reports and related testimony do not show her methodology 'consists[s] of a testable hypothesis,' has been 'subjected[ed] to peer review[,]' nor has a 'known or potential rate of error.'" *Id.* at 26 (citing *Daddio v. A.I. DuPont Hosp. for Child. of Nemours Found.*, 650 F. Supp. 2d 387, 403 (E.D. Pa. 2009), *aff'd sub nom. Daddio v. Nemours Found.*, 399 F. App'x 711 (3d Cir. 2010). Accordingly, the Court then found Dr. Mulkey's specific causation conclusion—that Defendants' conduct in this case caused Sean's autism/ASD outcome—to be "an unreliable 'speculative leap'" without additional support and explanation. *Id.* at 28 (citing *Hoefling v. U.S. Smokeless Tobacco Co.*, LLC, 576 F. Supp. 3d 262, 274 (E.D. Pa. 2021)). So, the Court granted Defendants' *Daubert* motions and precluded Dr. Mulkey from providing "(1) a general causation opinion that HIE/NE increases the risk and/or causes autism/ASD, and (2) a specific causation opinion that Sean's HIE/NE caused his autism/ASD in this case." *Id.* at 32.

On May 24, 2023, Plaintiffs moved for the Court to reconsider and vacate its May 10, 2023 Order (ECF No. 159) precluding Dr. Mulkey from opining at trial on the issue of autism causation. ECF No. 193. Plaintiffs also request oral argument for an opportunity for Dr. Mulkey to address her review of the literature and the relevance of the other literature produced by Defendants but not presented during Dr. Mulkey's deposition. *Id.* at 1. And, in the alternative, Plaintiffs request the Court amend its Order pursuant to Section 1292 to include language that the Court is "of the opinion that such Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation." *Id.* at 1-2 (citing 28 U.S.C. § 1292). All Defendants oppose Plaintiffs' motion for reconsideration, and, in the alternative, motion for certification of an interlocutory appeal. *See generally* ECF Nos. 211, 212.

2. **LEGAL STANDARDS**
    a. <u>Motion for Reconsideration</u>

"A motion for reconsideration requires the movant to show (1) an intervening change in the controlling law; (2) new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or prevent manifest injustice." *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 190 (3d Cir. 2021) (citing *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)). "[A] motion for reconsideration 'addresses only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through— rightly or wrongly.' " *Spady v. Bethlehem Area Sch. Dist.*, No. CV 12-6731, 2016 WL 6995024, at *3 (E.D. Pa. Nov. 29, 2016) (quoting *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 637, 640 (E.D. Pa. 2010) (internal quotations omitted)).

Thus "[m]ere dissatisfaction with the Court's ruling . . . is not a proper basis for reconsideration." *Id.* (quoting *Progressive Cas. Ins. Co. v. PNC Bank, N.A.*, 73 F. Supp. 2d 485,

487 (E.D. Pa. 1999)). So "[m]otions for reconsideration may not be used to give a litigant a 'second bite at the apple.'" *United States ex rel. Sirls v. Kindred Healthcare, Inc.*, 536 F. Supp. 3d 1, 4 (E.D. Pa. 2021) (internal citations omitted). And lastly, "[b]ecause of the interest in finality[,] . . . courts should grant motions for reconsideration sparingly." *Bausch*, 222 F. Supp. 2d at 669 (citing *Rottmund v. Continental Assurance Co.*, 813 F.Supp. 1104, 1107 (E.D.Pa.1992)).

      b. <u>Motion for Certification of an Interlocutory Appeal</u>

"A district court has discretion under 28 U.S.C. § 1292(b) to decide whether or not to certify a case for immediate appeal." *Titelman v. Rite Aid Corp.*, No. CIV.A. 00-2865, 2002 WL 32351182, at *1 (E.D. Pa. Feb. 5, 2002) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir.1974) (en banc)). Under Section 1292(b), a district court may certify an order for interlocutory appeal where: (1) the order ""involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" on that question; and "an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). And yet, "[e]ven if the moving party satisfies the statutory criteria, the district court "possesses discretion to deny certification of an [interlocutory] appeal." *Knopick v. Downey*, 963 F. Supp. 2d 378, 398 (M.D. Pa. 2013) (internal citations omitted). Furthermore, "[i]t has . . . been cautioned that certification is the exception, to be used only in the rare case where an immediate appeal would avoid expensive and protracted litigation." *Titelman*, 2002 WL 32351182 at *1 (citing *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir.1958); *Orson, Inc. v. Miramax Film Corp.*, 867 F.Supp. 319, 321 (E.D.Pa.1993)).

    3. **DISCUSSION**

Plaintiffs first request the Court reconsider and vacate its Order of May 10, 2023, precluding Dr. Mulkey from opining at trial on the issue of autism causation. *See generally* ECF No. 193. Plaintiffs also request oral argument to provide Dr. Mulkey an opportunity to address

her review of the literature and the relevance of the other literature produced by Defendants but not presented during Dr. Mulkey's deposition. *Id.* at 1. And, in the alternative, Plaintiffs request the Court amend its Order pursuant to Section 1292 to include language that the Court is "of the opinion that such Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation." *Id.* at 5 (citing 28 U.S.C. § 1292(b)). The Court will consider Plaintiffs' requests in seriatim.

    a. <u>Plaintiffs' Motion for Reconsideration and Oral Argument is Denied Because Plaintiffs Have Not Shown the Need to Correct a Clear Error of Law or Fact nor the Necessity for Oral Argument.</u>

First, Plaintiffs appear to submit reconsideration is warranted due to the "need to correct a clear error of law or fact or to prevent manifest injustice."[5] Plaintiffs contend "the Court ruled Dr. Mulkey's Opinion that HIE/NE increases the risk of autism is unreliable because she failed to perform a comprehensive review of the literature, including the literature cited by Defendants, which purportedly contains 'differing opinions' and 'equivocal or inconsistent findings.'" ECF No. 193 at 11 (footnote omitted). Throughout their motion, Plaintiffs scrutinize studies cited by Defendants' experts. Plaintiffs contend "many studies cited by Defendants' experts, or otherwise presented by the defense in this case, are not 'inconsistent' with Dr. Mulkey's opinions." *Id.* (emphasis in the original). Plaintiffs thus aver Dr. Mulkey's opinion is not unreliable merely because she fails to address literature relied upon by Defendants. *Id.* at 11-16.

---

[5] ECF No. 193 at 6 (quoting *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). The Court finds Plaintiffs move for reconsideration on these grounds because, upon listing the three grounds for reconsideration, Plaintiffs emphasized the grounds concerning a clear error of law or fact. *See id.* Nevertheless, Plaintiffs then provide a lesser standard, e.g., that "the Court erred as a matter of law[,]" throughout their brief. *Id.* at 6, 18.

Plaintiffs' justification of Dr. Mulkey's limited literature review does not warrant reconsideration of the Court's *Daubert* Order and Opinion. The Court provided analysis concerning the reliability of Dr. Mulkey's methodology beyond the consideration of Defendants' studies and literature. Ultimately, the Court found Dr. Mulkey's methodology, as a whole, to be unreliable. ECF No. 160 at 23 (". . . Dr. Mulkey does not purport to perform a comprehensive survey of the literature, nor does she outline a 'scientific methodology' she used to form her opinion.") (citing *Hoefling*, LLC. 576 F. Supp. 3d at 275). The Court found, inter alia, Dr. Mulkey's methodology included an insufficient survey of relevant literature because she only provided a "sample" of literature supporting her findings, as opposed to an "exam[ination of] 'the literature as a whole.'" *See e.g.*, *id.* at 23-25 (citing *Hoefling*, 576 F. Supp. at 273 (internal quotation omitted)). Thus, the Court referred to literature provided by Defendants merely to highlight the existence of literature critically examining and questioning an association between HIE/NE and autism—none of which Dr. Mulkey provided nor considered in her expert reports. *See id.* at 19-26; *see also id.* at 20 (finding "it is possible Dr. Mulkey **could** provide a causal opinion from the existing medical literature, but she does not provide a reliable methodology in forming her conclusions"). Moreover, the Court provided several additional aspects of Dr. Mulkey's methodology that challenged its reliability. *See id.* at 26-27 (finding "Dr. Mulkey's methodology behind her general causation/association opinion also does not amount to 'scientific principles and methodology that open the *Daubert* gate.'") (quoting *Hoefling*, 576 F. Supp. 3d at 280 (internal citations omitted)).

So, Plaintiffs' reexamination of Defendants' studies does not impact a critical finding of the Court in its preclusion of Dr. Mulkey's causation testimony, nor does it show the Court clearly erred as a matter of law. *See Gibson*, 994 F.3d at 190 (citing *Lazaridis*, 591 F.3d at 669). The

Court applied established law on the admissibility of expert opinions to find Dr. Mulkey based her expert reports and testimony on an unreliable methodology. *See generally* ECF No. 160. Plaintiffs' dissatisfaction with the Court's ruling does not warrant reconsideration. *See Spady*, 2016 WL 6995024, at *3 (quoting *In re Blood*, 756 F. Supp. 2d at 640 (internal quotations omitted)).

In their motion for reconsideration, Plaintiffs also request "an opportunity for Dr. Mulkey to address her review of the literature and the relevance of the other literature produced by Defendants but not presented during her deposition." ECF No. 193 at 18. But, as stated, Plaintiffs have not shown how "the relevance of the other literature produced by Defendants" is a determinative factor in the Court's analysis under *Daubert*; the Court precluded Dr. Mulkey's causation testimony for a variety of reasons concerning her methodology. *Id.* Moreover, the Court previously considered—and denied—a request from Defendants to hold oral argument on the underlying *Daubert* motion.[6] The Court declined Defendants' request for a hearing because the Parties previously "submitted voluminous material on the subject of autism causation and the reliability of Dr. Mulkey's opinion[]" and "[t]he Parties ha[d] not indicated there remain[ed] any specific additional evidence to be presented at a *Daubert* hearing . . . ." ECF No. 160 at 17 n. 16. And the Court's earlier reasoning concerning oral argument stands.

Plaintiffs' contentions thus do not warrant the Court's granting of a new request to hold argument and provide further "opportunity for Dr. Mulkey to address her review of the literature and the relevance of the other literature produced by Defendants." ECF No. 193 at 18. In addressing Defendant's *Daubert* Motion, the Court already considered and denied holding a

---

[6] *See* ECF No. 160 at 17 n. 16. Notably, in Plaintiffs' response to Defendants' motion and request for oral argument, Plaintiffs did not request oral argument on the matter. *See* ECF No. 132.

hearing. ECF No. 160 at 17 n. 16. And Plaintiff does not raise persuasive averments as to why a hearing is warranted at this time. The motion for reconsideration is not "a vehicle for relitigating . . . arguments already made before this Court." *United States v. NYSARC, Inc.*, No. 03 CIV. 7250 (SHS), 2010 WL 11583434, at *1 (S.D.N.Y. Nov. 17, 2010). The Court declines to grant Plaintiffs' request for a hearing on Dr. Mulkey's literature review.

    b. <u>Plaintiffs' Motion for Certification of an Interlocutory Appeal is Denied Because Plaintiffs Cannot Establish There is Substantial Ground for Difference of Opinion on this Matter.</u>

In the event the Court denies Plaintiffs' motion for reconsideration and/or to hold a hearing, Plaintiffs request the Court "amend [its] Order pursuant to 28 U.S.C.[] [Section] 1292 to include language that the Court is "of the opinion that such Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation." ECF No. 193 at 5 (citing 28 U.S.C. § 1292).

A district court may certify an order for interlocutory appeal where: (1) the order "involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" on that question; <u>and</u> "an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The moving party bears the burden of demonstrating that 'exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment.'" *Titelman*, 2002 WL 32351182, at *1 (quoting *Rottmund*, 813 F.Supp. at 1112).

First, Plaintiffs contend a controlling question of law is at issue. "With respect to the first element, an interlocutory Order 'involves a controlling question of law if either (1) an incorrect disposition would constitute reversible error if presented on final appeal, or (2) the question is

10

'serious to the conduct of the litigation either practically or legally.'" *Marcelle v. City of Allentown*, No. 07-CV-4376, 2010 WL 3606405, at *2 (E.D. Pa. Sept. 16, 2010) (internal citation omitted). Here, Plaintiffs aver there is a controlling question of law because the Court's preclusion of Dr. Mulkey's autism causation opinion "would constitute reversible error and require a new trial on that issue." ECF NO. 193 at 19. And further, Plaintiffs submit the causation of Sean's autism is a significant issue in this litigation. *Id.* The Court agrees. Causation is a required element of Plaintiffs' professional negligence/medical malpractice claim.[7] And thus a reversal of the Court's preclusion of Dr. Mulkey would impact a significant issue in this matter and may require a new trial.

But the Court is not persuaded by Plaintiffs' averment there is substantial ground for difference of opinion on this matter. "A 'substantial ground for difference of opinion' must arise out of doubt as to the correct legal standard, such as conflicting precedent, the absence of controlling law, or complex statutory interpretation." *Consumer Fin. Prot. Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 113 (M.D. Pa. 2021). Here, there is no doubt as to the controlling legal standard concerning expert reliability under *Daubert* and its progeny. *See e.g.*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 732 (3d Cir. 1994). And, more specifically, the U.S. Court of Appeals for the Third Circuit has directed district courts to consider a variety of factors in assessing an expert's reliability, although the inquiry "is a flexible one." *In*

---

[7] *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (finding, to prevail on medical malpractice claims, Plaintiffs must "establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm") (quoting *Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997) (finding medical malpractice claims sounding in negligence have the same elements as those in ordinary negligence actions).

*re Paoli*, 35 F.3d at 742; *see also id.* n. 8.  The Court applied controlling law to the facts of this matter concerning Dr. Mulkey's opinion and methodology.  *See* ECF No. 160 at 18-30.  And, in doing so, "[t]he Court has 'considerable leeway' in deciding how to test an expert's reliability and in deciding whether or not the expert's relevant testimony is reliable."  *Daddio v. A.I. DuPont Hosp. for Child. of Nemours Found.*, 650 F. Supp. 2d 387, 403 (E.D. Pa. 2009), *aff'd sub nom. Daddio v. Nemours Found.*, 399 F. App'x 711 (3d Cir. 2010).

Moreover, Plaintiffs' contention the Court should not have precluded Dr. Mulkey's autism causation conclusions because other "courts that have addressed the issue [of HIE-related brain damage causing autism] have reached different opinions" is unconvincing.  ECF No. 193 at 20 (internal citations omitted); *see also* ECF No. 160 at 20 n. 20 (finding Plaintiffs' averments concerning recent case law allowing testimony on autism causation immaterial to the Court's *Daubert* analysis concerning the reliability of Dr. Mulkey's methodology).  Within *Daubert* analyses, "[t]he Court is not [necessarily] bound by the decisions of other trial courts concerning different experts . . . ."  ECF No. 160 at 20 n. 20.  In this matter, "the [C]ourt's reliability analysis is focused on the methodology employed by the expert"—as opposed to the findings of other trial courts concerning different experts and their varying methodologies.  *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Prod. Litig.*, 509 F. Supp. 3d 116, 132 (D.N.J. 2020) (internal citation omitted).

The Court thus declines to exercise discretion to certify this matter for interlocutory appeal because the reliability of Plaintiffs' expert is not an issue that "arise[s] out of doubt as to the correct legal standard, such as conflicting precedent, the absence of controlling law, or complex statutory interpretation."  *Consumer*, 522 F. Supp. 3d at 113.  Plaintiffs' request for certification of an interlocutory appeal is denied.

4. **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Reconsideration of the Court's Order of May 10, 2023; and, in the alternative, Request to Amend the Court's Order Pursuant to 28 U.S.C. § 1292(b) to Certify Interlocutory Appeal (ECF No. 193) is denied.

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge